**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

JEROME L. ROBERTSON,

        Petitioner,

v.                      ACTION NO. 2:14cv311

ERIC D. WILSON,

        Respondent.

**UNITED STATES MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Jerome Robertson ("petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. An order of reference dated November 5, 2014, assigned this matter to the undersigned. ECF No. 3. Petitioner, an inmate presently incarcerated and serving a federal sentence at the Federal Correctional Complex in Petersburg, Virginia ("FCC Petersburg"), alleges violations of his due process rights and a Bureau of Prisons ("BOP") program statement in conjunction with the collection of restitution payments pursuant to the Inmate Financial Responsibility Program ("IFRP"). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby recommended that respondent's motion to dismiss be GRANTED and that the petition be DENIED and DISMISSED WITH PREJUDICE.

**I. STATEMENT OF THE CASE**

The petition alleges that petitioner is incarcerated at FCC Petersburg and is currently serving a sentence for a 2007 conviction before this Court. ECF No. 1 at 2. With respect to the

nature of his claim and the facts supporting it, the petition alleges only the following:

> FCC-Petersburg is in violation of Program Statement 5380.08 and Due Process. Staff-counselors at FCC Petersburg-Low [are] taking it upon [themselves] to make me pay FRP payments, via, punishing me for not paying my court imposed restitution. They are not a collection agency and their actions violate PS 5380.08.

ECF No. 1 at 3.

In response to the Court's Order directing the filing of an answer or response to the petition, ECF No. 11, on July 7, 2015, respondent moved to dismiss the petition for failure to state a claim or, in the alternative, for summary judgment. ECF No. 12. In the memorandum accompanying the filing, respondent attached various exhibits discussed below pertaining to petitioner's prosecution, his restitution obligation, and his exhaustion of administrative remedies. ECF No. 13. The criminal judgment, dated March 5, 2007, reflects that the petitioner was convicted, pursuant to guilty pleas, on two counts of Hobbs Act robberies, in violation of 18 U.S.C. § 1951, and two counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). ECF No. 13-2. For these crimes, the Court sentenced petitioner to serve 420 months in jail and to pay financial penalties, including a $400 special assessment and $10,640.83 in restitution. ECF Nos. 13-2 and 13-3 (restitution judgment specifying such sum was "due immediately").

On May 26, 2011, petitioner entered into an agreement with the BOP to pay $25.00 per quarter towards his court-ordered financial obligations beginning in September 2011. ECF No. 13-4. This agreement, which recites the petitioner's name and bears a signature matching that on the petition, states, in pertinent part:

> A staff member has provided me with information regarding the potential consequences of a refusal on my part to participate in the inmate financial responsibility program.

> I agree to submit payments toward satisfaction of the financial obligation(s) indicated on this form in accordance with the payment plan outlined below. I agree to follow this payment plan until the financial obligation(s) is satisfied.

ECF No. 13-4 at 2. The financial obligations covered by the agreement were identified as $8.03 remaining due on the petitioner's special assessments and the full restitution balance of $10,640.83. ECF No. 13-4 at 3. Due to subsequent payments apparently made pursuant to the agreement, respondent reports that, as of late June 2015, the petitioner's restitution and special assessment balances were $10,390.83 and $8.03, respectively. ECF No. 13-5 at 3. Prior to filing the pending petition, and as conceded by respondent, petitioner exhausted his administrative remedies, by apparently seeking to end his financial agreement with the BOP, without the loss of any privileges and benefits associated with participation in the IFRP. ECF No. 13-6 at 3.

Petitioner has not filed a response to the respondent's motion. Because the time for such a filing has passed, this matter is ripe for decision.

## II. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Petitioner's challenge to the application of the IFRP and his payment of restitution is a claim regarding the execution of his sentence and is properly brought as a petition for habeas relief pursuant to 28 U.S.C. § 2241. *Fontanez v. O'Brien*, ___ F.3d ___, 2015 WL 7753142, at *2-*3 (4th Cir. Dec. 2, 2015) ("challenge to the BOP's administration of the IFRP is a challenge to the 'execution' of a sentence that is cognizable under 28 U.S.C. § 2241"); *Coleman v. Brooks*, 133 F. App'x 51, 53 (4th Cir. 2005) (unpublished) (claim that BOP was "improperly executing" a restitution order "was properly brought as a petition for habeas corpus relief arising under 28 U.S.C. § 2241").

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a cause of action that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

3

considering a motion to dismiss for failure to state a claim, a court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted). In addition, a court may take judicial notice of matters of public record in considering such a motion to dismiss. *Sec'y of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Because the exhibits attached to respondent's motion pertain to undisputed facts that are integral to the petition or are a matter of public record, the Court considers them in addressing the pending motion.

A motion to dismiss pursuant to rule 12(b)(6) tests the sufficiency of a complaint without resolving factual disputes and, therefore, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the'" complainant. *Kensington Volunteer Fire Dep't*, 684 F.3d at 467 (citation omitted). When applying this standard, a court should not dismiss a claim unless "'it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (citation omitted).

The IFRP and its operation are described in BOP Program Statement 5380.08 and 28 C.F.R. Part 545, Subpart B. According to the program statement, the BOP implemented the IFRP to comply with federal statutes requiring that all law enforcement agencies engage in a "diligent effort . . . to collect court-ordered financial obligations." BOP Program Statement 5380.08 at ¶1. Accordingly, the IFRP exists as means of "encourag[ing] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. To do this, BOP staff develop a financial plan for any such inmate and monitor whether the inmate makes the payments called for by the plan and regularly assess the progress made in satisfying outstanding

financial obligations, such as court-ordered restitution and special assessments. 28 C.F.R. § 545.11. An inmate's payments may be made using any combination of funds earned while incarcerated (that is, from "institution resources") and funds provided to the inmate from friends or family (that is, from "non-institution (community) resources"). 28 C.F.R. § 545.11(b). The IFRP requires that an inmate pay no less than $25.00 per quarter and further provides that this minimum may be increased after evaluation of the inmate's specific obligations and resources. *Id.* If an inmate verbally refuses to participate in the IFRP or fails to make payments previously agreed upon as part of a financial plan, the BOP may change the inmate's IFRP status or assignment category from "participates" to "refuses." BOP Program Statement 5380.08 at ¶9. Such a refusal may carry with it assorted negative consequences pertaining to the inmate's pay, work, housing, program eligibility, and the like. 28 C.F.R. § 545.11(d)(1)-(11) (noting that refusal to participate or comply with a financial plan shall "ordinarily" result in such consequences). Those consequences include: (1) loss of ability to seek a furlough; (2) loss of receipt of performance, bonus, or vacation pay; (3) loss of assignment on work details outside a facility's secure perimeter; (4) removal from or non-placement in any UNICOR position; (5) restriction of commissary spending privileges; (6) placement into a lower housing status; (7) denial of placement in a community correctional center; and (8) denial of incentives for participation in residential drug treatment programs. *Id.* To be removed from "refuse" status, an inmate "must demonstrate a willingness to continue participation in the program." BOP Program Statement 5380.08 at ¶9(d).

Although the petition contains scant detail, both it and the respondent's filing indicate that petitioner agreed to participate in the IFRP and entered into a financial plan requiring payments of $25.00 per month starting in September 2011. Construing the *pro se* petition

liberally as required, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), sometime thereafter petitioner apparently claimed his participation was involuntary, sought to withdraw from the financial plan, and has been or fears being punished for doing so and discontinuing payment of his court-ordered restitution. ECF No. 1 at 3. Thus, petitioner challenges the BOP's authority to establish and enforce an IFRP financial plan in connection with court-ordered restitution.

Courts, however, have regularly rejected challenges to the BOP's authority to operate and administer the IFRP. As the Second Circuit noted in *Johnpell v. Thornburgh*, 898 F.2d 849, 851 (2d Cir. 1990), "the IFRP program serves valid penological interests and is fully consistent with the [BOP's] authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation" of federal inmates. Consistent with the goal of promoting rehabilitation, "the BOP retains discretion to place an inmate in IFRP in order to achieve compliance with the sentencing court's directives." *Summersett v. Baucknecht*, 496 F. Supp. 2d 636, 640 (D.S.C. 2007) (citing *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002)).

At sentencing, this Court fixed the amount of restitution to be paid and also specified that such sum was "due immediately," ECF No. 13-3, which is "'generally interpreted to require payment to the extent that the [petitioner] can make it in good faith, beginning immediately.'" *Coleman*, 133 F. App'x at 53 (quoting *Matheny*, 307 F.3d at 712). For this reason, any claim by the petitioner that the BOP, in applying the IFRP in this case, improperly performed a judicial function assigned to the Court is unsupported. *Cf. United States v. Miller*, 77 F.3d 71, 78 (4th Cir. 1996) (noting that a district court improperly abdicated a "core judicial function" by allowing the BOP to assess the amount of a criminal fine and establish the timing of installment payments to satisfy said fine). To the contrary, the BOP properly exercised its authority in using the IFRP to gain petitioner's compliance with the Court's directives. *Coleman*, 133 F. App'x at

53 (rejecting as "meritless" a section 2241 claim that BOP improperly used the IFRP as a means to collect restitution); *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999) (noting that the IFRP "has been uniformly upheld against constitutional attack" and that "[n]othing barred the BOP from ensuring pursuant to the IFRP that [the defendant] make good-faith progress toward satisfying his court-ordered obligations").

Petitioner further alleges a violation of due process, claiming that the BOP is "punishing" him for not paying court-ordered restitution. This claim also is without merit. The negative consequences stemming from a refusal to participate in the IFRP "amount to the loss of privileges, not the imposition of hardships upon non-participating inmates." *Driggers v. Cruz*, 740 F.3d 333, 338 (5th Cir. 2014). Nor can the petitioner establish that the loss of any such privileges and inducements attendant to IFRP participation rise to the level of constitutionally-protected liberty or property interests. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484 (1995) (no liberty interest in avoiding disciplinary confinement); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (no liberty interest in not being transferred); *United States v. Lemoine*, 546 F.3d 1042, 1049 (9th Cir. 2008) (no entitlement "to any of the benefits agreeing to participate in the IFRP would provide"); *James v. Quinlan*, 866 F.2d 627, 630 (3rd Cir. 1989) (no liberty or property interest existed in prison job assignments potentially at risk due to non-compliance with IFRP); *Williams v. Farrior*, 334 F. Supp. 2d 898, 903-04 (E.D. Va. 2004) (noting other circuits have "considered and rejected due process challenges to the [IFRP]" and finding no liberty interest in prison placement or job assignment).

Constitutionally-protected interests do not arise simply because an inmate loses access to privileges or is subjected to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005) (citation omitted). Instead, an interest protected by the Due Process

Clause arises when the deprivation of a privilege "imposes atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484-85. However, the loss of privileges that may follow upon refusing to participate in the IFRP and to pay one's court-ordered financial obligations fails to create such a severe hardship. *See Driggers*, 740 F.3d at 338 (citing *Lemoine*, 546 F.3d at 1046; *Duronio v. Gonzalez*, 293 F. App'x 155, 157 (3d Cir. 2008); *Davis v. Wiley*, 260 F. App'x 66, 69 (10th Cir. 2008); *United States v. Warmus*, 151 F. App'x 783, 787 (11th Cir. 2005); *Dorman v. Thornburgh,* 955 F.2d 57, 58 (D.C. Cir. 1992)). Finally, even if such a protected interest existed, the BOP's use of the IFRP is "reasonably related to legitimate penological interests," as discussed above. *Williams*, 334 F. Supp. 2d at 904; BOP Program Statement 5380.08 at ¶1 (the BOP "shall consider the inmate's efforts to fulfill [court-ordered financial] obligations as indicative of that individual's acceptance and demonstrated level of responsibility"). Therefore, petitioner fails to state a due process claim with respect to his challenge to the IFRP.

This leaves only petitioner's claim that FCC Petersburg has also violated BOP Program Statement 5380.08. The petition, however, alleges no facts identifying the basis for such a claim. Nor has the Court's liberal review of the petition and the exhibits attached to the respondent's motion identified grounds for such a claim. To the contrary, the undisputed facts indicate that petitioner entered into a financial plan, developed pursuant to the program statement and the IFRP, and that the plan in question imposes only the minimum payment specified in the program statement and the accompanying regulation. 28 C.F.R. § 545.11(b)(1) (specifying that "[o]rdinarily, the minimum payment for non-UNICOR and UNICOR grade 5 inmates will be $25.00 per quarter"). In the absence of any factual allegations indicating any violation of or irregularity with respect to FCC Petersburg's implementation or application of the program

statement, petitioner's program statement claim also fails to state a claim upon which relief can be granted.

### III. RECOMMENDATION

Based upon the foregoing, the Court RECOMMENDS that respondent's motion to dismiss (ECF No. 12) be GRANTED for the reasons stated herein and the petition for a writ of habeas corpus (ECF No. 1) be DENIED and DISMISSED WITH PREJUDICE.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules).

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
December 4, 2015